UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Sid Brooks

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| COLORADO SUN OIL PROCESSING LLC | ) | 10-24424 - SBB |
| Tax ID: 26-2175087 | ) | Chapter 11 |
| | ) | |
| Debtor(s). | ) | |

**ORDER**

  THIS MATTER came before the Court for an evidentiary hearing on June 30, 2011 and July 1, 2011, and for oral closing argument on July 22, 2011, to consider:

1. The Motion Pursuant to Bankruptcy Code Sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006 for (I) Entry of an Order Approving Asset Purchase Agreement; (B) Authorizing and Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, Subject to Higher and Better Offers; (C) Authorizing the assumption and assignment of the Equipment Agreement; (D) Authorizing the Assignment and Assumption or Rejection of Certain Other Executory Contracts and Unexpired Lease; and (E) Granting Related Relief ("Sale Motion")[1] filed by Harvey Sender, Chapter 11 Trustee ("Trustee"); and

2. The Motion for Order Requiring Trustee to (I) Pay Rent; (II) Provide Adequate Protection; and (III) Assume or Reject Unexpired Lease of Personal Property filed by SunOpta Foods, Inc ("Sunopta Foods").[2]

  During the evidentiary hearing, the Trustee was represented by Carl A. Eklund and James P. Bickford of Ballard Spahr LLP ("Ballard Spahr"). Colorado Mills, LLC ("Colorado Mills") was represented by Patrick D. Vellone and Jordan D. Factor of Allen & Vellone PC. Kutner Miller Brinen, P.C. ("Kutner") was represented by Lee M. Kutner. SK Food International, Inc. ("SK Food") was represented by Michael E. Lindsay of Snell & Wilmer L.L.P. SunOpta Grains and Foods Inc. ("SunOpta Grains") and SunOpta Foods (collectively called "SunOpta") were represented by Eric A. Bartsch and Brandy A. Sargent of Stoel Rives LLP.

  The Court, has reviewed the pleadings and the within case file and has conducted an evidentiary hearing on this matter, and, now, makes findings of fact, conclusions of law, and enters the following Order, in this matter.

---

[1]  Docket No. 197.

[2]  Docket Nos. 317-318.

I.  **Factual Findings**[3]

   A.  **The Joint Venturers**

Colorado Sun Oil Processing LLC ("Debtor") operates a vegetable oil refinery, and is the product of a joint venture between SunOpta Grains (formerly known as Sunrich LLC) and Colorado Mills (collectively referred to as the "Joint Venturers").[4] SunOpta Grains and Colorado Mills each own 50% of the Debtor and each have two seats on the Board of Directors of the Debtor ("Board of Directors").[5] Colorado Mills is the day-to-day operator of the Debtor.[6]

Even before the Debtor began operations, disputes arose between the Joint Venturers regarding the price that SunOpta Grains would pay for oil sold to it by Colorado Mills.[7] The Debtor began operations in January 2010.[8] By March 2010 the disputes had deteriorated to the point that the parties were deadlocked[9] and Colorado Mills sued SunOpta Grains ("State Court Action") in Colorado state court ("State Court") seeking judicial dissolution of the Debtor.[10] The summons was served on SunOpta's Board representatives during a Board meeting.[11]

---

[3]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. *See* FED.R.BANKR.P. 7052.

[4]  SunOpta June 15 Exhibit 1 at 1.01; Colorado Mills June 30 Exhibit 5 at 1.01. Due to the consolidated nature of and number of parties involved in these proceedings, the Court admitted substantially identical exhibits offered on more than one date or by more than one party. When an exhibit is first referenced herein, an effort has been made to also identify all of the instances where the same exhibit was admitted by referencing the party offering the exhibit, the date admitted, and the party's exhibit number. Thereafter, only the first admitted exhibit will be referenced.

[5]  SunOpta June 15 Exhibit 1 at 2.01.

[6]  SunOpta June 15 Exhibit 1 at 2.02.

[7]  Docket No. 418, June 30 Transcript at 88:20-24.

[8]  Docket No. 418 at 71:9-15.

[9]  Docket No. 420, July 1 Transcript at 79:20-23, 241:20-242:2.

[10]  Docket No. 420 at 78:23-79:3. The Joint Venturers differ as to whether the State Court has already ordered that the Debtor be dissolved or whether the issue remains to be arbitrated. Regardless, both parties have admitted that dissolution is sought in the State Court Action.

[11]  Docket No. 420 at 241:20-242:2.

### B. The Involuntary Petition, Appointment of Trustee, and Order for Relief

After the State Court Action was commenced, the relationship between the Joint Venturers deteriorated further, and on June 9, 2010 ("Petition Date"), an involuntary bankruptcy petition ("Involuntary Petition") was filed against the Debtor by Royal Electrical Services, Inc. ("Royal Electric"), one of Debtor's trade creditors, alleging a debt in the amount of $15,834.79.[12] Royal Electric was the only creditor to sign the petition. Colorado Mills has admitted to this Court in prior hearings that it "collaborated" with Royal Electric to file the Involuntary Petition.[13]

SunOpta Grains sought to dismiss the involuntary bankruptcy petition, alleging that Royal Electric's "debt" did not satisfy the requirements of Section 303 of the United States Bankruptcy Code ("Bankruptcy Code"), that the Debtor was paying its debts as they became due, and that this case was filed in a bad-faith effort to stall or derail the State Court Action ("Motion to Dismiss").[14] The Motion to Dismiss, and a related Motion for Summary Judgment filed by Colorado Mills, have been taken under advisement.[15]

SunOpta Grains sought appointment of a trustee on August 6, 2010.[16] Colorado Mills asserted that a trustee should be appointed only for the limited purpose of replacing the Debtor's Board of Directors.[17] At a hearing on August 16, 2010, this Court found cause to appoint a trustee, and ruled that the trustee would have all of the rights and responsibilities of a Chapter 11 trustee, including the ability to sell Debtor's assets.[18] An order directing appointment of a Chapter 11 trustee was entered the next day.[19] On August 23, 2010 Mr. Sender was appointed as the Trustee.[20]

---

[12] Docket No. 1.

[13] Docket No. 252, Transcript of March 30, 2011 hearing at 18:23-19:7.

[14] Docket No. 12 at 8-12.

[15] Docket No. 165.

[16] Docket No. 39.

[17] Docket No. 53 at 34.

[18] Docket No. 206, Transcript of August 16, 2010 hearing at 48:16-51:11.

[19] Docket No. 56.

[20] Docket No. 66.

On October 21, 2010, the Trustee and SunOpta Grains filed a stipulation for entry of an order for relief ("Stipulation for Relief") providing that any order would not impact the Motion to Dismiss.[21] Royal Electric and Colorado Mills objected, because the stipulation preserved the Debtor's ability to pursue damages for the alleged bad-faith filing of this case.[22] On October 26, 2010, this Court entered the Order for Relief based on the Stipulation for Relief ("Order for Relief").[23]

Royal Electric filed a Motion for Leave to Appeal that order,[24] which the District Court denied, finding that an appeal would be ripe once this Court decides the Motion to Dismiss.[25] Colorado Mills filed a Motion for Summary Judgment and a Motion for Reconsideration.[26] Briefing on those motions has been completed, and all matters related to the Motion to Dismiss and Order for Relief have been taken under advisement.

The Joint Venturers have been contentious, adversarial, bitter and, too frequently, substituting mistrust and acrimony for sound and successful business judgment. This case is largely, if not exclusively, a two-party dispute. The two parties, the deadlocked Joint Venturers, have engaged in "scorched earth" litigation tactics and "no holds barred" business survival strategies. Unfortunately, between these two warring entities, the trustee has been caught simply trying to do his job: preserve value, administer the case, and achieve successful timely disposition of estate assets.

### C. Case Administration and Schedules

The Trustee filed motions to employ Ballard Spahr as his counsel and to approve interim compensation procedures allowing both the Trustee and Ballard Spahr to receive interim payments of professional fees. Those motions were approved by this Court.[27]

---

[21] Docket No. 112-1.

[22] Docket Nos. 115 and 118.

[23] Docket No. 119.

[24] Docket Nos. 134-35.

[25] U.S. District Court Case No. 1:10-cv-02755-JLK, Docket No. 7.

[26] Docket Nos. 142-43.

[27] Docket Nos. 69, 70, and 94. For context, through the beginning of July 2011, Ballard Spahr has received interim payments in the total amount of $104,741.14. Docket No. 407 at 2. The Trustee has received $39,362.67. Docket No. 208 at 23.

The Trustee also filed the Debtor's Schedules and Statements of Financial Affairs ("Schedules") and the Monthly Operating Reports ("Operating Reports"). The Schedules value the Debtor's real property (the building and the land on which it is built) at $1,007,903.76[28] and the personal property at $102,676.92 (which includes a limited amount of equipment worth $12,907.58).[29]

The only executory contract listed in the Schedules is a Lease Agreement dated February 24, 2008 ("Equipment Lease") between the Debtor and SunOpta Foods (formerly SunOpta Food Group LLC), which includes the bulk of the equipment which Debtor uses in its operations ("Equipment").[30]

The Schedules and Operating Reports confirm that this is a two-party case. On the Petition Date, the Debtor had a total of thirteen unsecured creditors, including Colorado Mills and SunOpta, and owed non-insider unsecured creditors $65,878.58.[31] However, by the time the Trustee was appointed, all of those creditors except the insiders and Royal Electric had been paid. Attached to the Trustee's September 2010 Operating Report is an "Aged Trial Balance" which shows that the only creditors of Debtor with outstanding payables from prior to June 9, 2010 are Colorado Mills, Royal Electric, and SunOpta.[32] The Court admitted an April 27, 2011 Aged Trial Balance showing the same thing.[33]

Only Colorado Mills and SunOpta filed claims. Colorado Mills alleged that it was owed $335,864.37.[34] SunOpta alleged that it was owed 274,009.76 – $125,000 for a promissory note and $149,009.76 on account of the Equipment Lease.[35]

The Trustee's May 2011 Operating Report reported the Debtor's cash as $317,812.50, accounts receivable as $137,536.49, work in progress as $29,173.61, and prepaid expenses as

---

[28]    Docket No. 151 at 13.

[29]    Docket No. 151 at 16.

[30]    Docket No. 151 at 24.

[31]    Docket No. 151 at 20-23.

[32]    Docket No. 124 at 11-15.

[33]    *See* SunOpta June 15 Exhibit 32.

[34]    Claim 3.

[35]    Claims 1 - 2.

$18,450.14, giving the Debtor "current assets" of $502,972.74.[36] It also reported outstanding accounts payable (other than SunOpta and Colorado Mills) of $225,972.35.[37] The total post-petition amounts owing to Colorado Mills and SunOpta Foods were listed at $143,807.95 and $705,048.80, respectively.[38]

On the Petition Date, at least one unpaid rent payment had accrued on the Equipment Lease.[39] After the Petition Date, neither Debtor nor Trustee made any rent payments until January 2011, by which time the total amount owed to SunOpta on account of the Equipment Lease was $663,091.83.[40] The Trustee made the January 2011 payment, but only paid $40,000 of the February 2011 payment.[41] By the time of the hearing, additional accruals for February, March, April, and May 2011 totaled $258,035.52.[42] The Trustee made payments for June and July 2011.

### D. Pending Matters Before the Court - The Bid Procedures Motion and the Sale Motion

In February 2011, the Trustee filed two motions: (a) the Sale Motion; and (b) a related Motion Pursuant to Bankruptcy Code Sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006 for Entry of an Order (A) Establishing Bidding and Auction Procedures Related to the Sale of Substantially All of the Debtor's Assets; (B) Approving Bid Protections; (C) Scheduling an Auction for Such Sale; (D) Establishing Certain Notice Procedures for Determining (i) Cure Amounts for Executory Contracts and Unexpired Leases to Be Assumed and Assigned, and (ii) Rejection Damages for Executory Contracts and Unexpired Leases to Be Rejected; (E) Approving the Deadline and Effective Date of the Sale; and (F) Granting Related Relief ("Bid Procedures Motion").[43]

The Sale Motion sought approval of an asset purchase agreement between the Trustee

---

[36] Docket No. 370 at 28.

[37] Docket No. 370 at 30.

[38] Docket No. 370 at 30.

[39] Docket No. 151 at 22.

[40] SunOpta June 15 Exhibit 10 at Schedule 4.8; SunOpta June 30 Exhibit 3 at Schedule 4.8; Trustee June 30 Exhibit 1 at Schedule 4.8.

[41] Docket No. 418 at 57:18-58:11.

[42] Docket No. 418 at 59:17-22.

[43] Docket No. 195.

and SunOpta Grains ("SunOpta APA"). The SunOpta APA provides for (a) purchase of substantially all of the Debtor's real and personal property, certain general intangibles (discussed below), trademarks, name, and goodwill and (b) assumption by SunOpta Grains of the Equipment Lease.[44] The purchase price consisted of $1,200,000 in cash, plus the amount necessary to cure the Equipment Lease, less any payments outstanding on the Equipment Lease after December 31, 2010.[45] The SunOpta APA would leave in the estate all of the Debtor's current assets as of closing, including cash, accounts receivable, work in progress, and prepaid expenses.[46] The SunOpta APA also provided for a breakup fee to be paid to SunOpta in the event that a different party was the successful purchaser of the Debtor's assets, not to exceed 3% of the purchase price.[47]

The Bid Procedures Motion sought approval of (a) bid procedures to be used in the contemplated Section 363(b) sale (including the deadlines, format and minimum overbid for competing offers), (b) the breakup fee, (c) a schedule for an auction in the event that competing bids were submitted, (d) assumption and assignment procedures related to the Debtor's contracts and leases, and (e) deadlines for closing a transaction ("Proposed Bidding Procedures").[48]

Shortly after the Sale and Bid Procedures Motions were filed—at least from this Court's vantage point—a new party appeared before this Court for the first time – SK Food.[49]

Objections to the Bid Procedures Motion were filed by Colorado Mills and SK Food ("Bid Procedures Objections").[50] Separate objections to the Sale Motion were filed by Colorado Mills, SK Food, and Kutner (former counsel to Debtor when it was the "alleged involuntary debtor" prior to the appointment of the Trustee) ("Sale Objections").[51]

---

[44] SunOpta June 15 Exhibit 10 at 2.1.

[45] SunOpta June 15 Exhibit 10 at 2.1.

[46] Docket No. 418 at 106:8-13.

[47] SunOpta June 15 Exhibit 10 at 10.3.

[48] Docket No. 195.

[49] Docket Nos. 201-03.

[50] Docket Nos. 209-10.

[51] Docket Nos. 212, 214, and 215.

### E. Appeal and the Status of the Bid Procedures Motion

Colorado Mills' and SK Food's Bid Procedures Objection asserted procedural and substantive objections to the Proposed Bidding Procedures. The Court held a hearing on the Bid Procedures Motion on March 30, 2011, to determine the objections raised by Colorado Mills and SK Food.

On April 4, 2011, this Court entered certain findings of fact and conclusions of law and an order ("Bidding Procedures Order") approving the certain modified bidding procedures ("Bidding Procedures").[52]

On April 7, 2011, Colorado Mills filed a Notice of Appeal to the United States District Court for the District of Colorado, Motion for Leave to Appeal ("Appeal Motion"), and Motion to Stay the Bidding Procedures ("Bankruptcy Stay Motion").[53] SK Food Joined in those motions on April 8, 2011.[54]

SK Food and Colorado Mills then filed separate Motions to Stay the Bidding Procedures Order directed to the District Court.[55] On May 3, 2011, the District Court entered an order staying the Bidding Procedures Order.[56] On May 4, 2011, the District Court entered an amended order ("Amended Stay Order"), which provided, in pertinent part: "rather than consider the merits of Motion for Leave to Appeal, I hold that Motion in ABEYANCE pending a determination on a full record of the Sale Motion in the Bankruptcy Court and REMAND the case to the Bankruptcy Court for that determination."[57] Specifically, the District Court was concerned about the "cross-allegations of bad faith and the potential that Chapter 11 proceedings are being used or misused to gain tactical advantage in state court proceedings and without any intention of reorganizing the Debtor" and directed this Court that the "overarching question on appeal is the propriety of the § 363 sale of Debtor to SunOpta, independently – or at least not solely because – of the bid procedures used to effect it."

---

[52]  Docket No. 241.

[53]  Docket Nos. 255, 256, and 258.

[54]  Docket No. 266.

[55]  U.S. Dist. Court Case No. 1:11-cv-00976-JLK, Docket Nos. 12 & 13.

[56]  U.S. Dist. Court Case No. 1:11-cv-00976-JLK, Docket No. 14.

[57]  U.S. Dist. Court Case No. 1:11-cv-00976-JLK, Docket No. 15 at 2-4.

### F. Status of the Sale Motion

In the Sale Motion, the Trustee represented that (a) the Trustee had attempted to solicit higher offers from third parties, but had been unable to negotiate a sale that would maximize the value of the Debtor's estate, (b) the SunOpta APA was the highest and best offer received by the Trustee, (c) the proceeds of the SunOpta APA would be adequate to pay all administrative and unsecured creditors in full, and (d) no interests other than SunOpta's UCC filing related to the Equipment Lease existed.[58]

Colorado Mills, SK Food and Kutner filed objections to the Sale Motion.[59] On May 18, 2011, the Trustee filed a Motion to Withdraw the Sale Motion, on the basis that, without the Bidding Procedures, no sale could go forward, and because the Trustee had received an offer from Colorado Mills that was "substantially greater than the offer made by SunOpta" ("Withdrawal Motion").[60] That offer purportedly required a Chapter 11 plan and assumption of the Equipment Lease and the alleged SK Food Agreements.[61]

On May 19, 2011, this Court heard arguments from the parties regarding the scope and extent of the matters that should go forward in response to Judge Kane's Amended Stay Order. On June 7, 2011, the Trustee withdrew his Withdrawal Motion.[62] The only reason given for the withdrawal was that the "circumstances regarding the sale of the estate's assets require that the Sale Hearing go forward."[63] At that time the Trustee did not inform the Court whether he was withdrawing his support of Colorado Mills' referenced new offer.

On June 13, 2011, the Court advised the parties that a hearing on the Sale Motion would go forward on June 30, 2011 and July 1, 2011 as previously scheduled ("Sale Hearing").

On June 16, 2011, the Trustee filed a "Notice of Higher and Better Offer".[64] The notice states that (a) the Trustee had signed an asset purchase agreement with Colorado Mills ("Colorado Mills APA"); (b) the Trustee was treating the Colorado Mills APA as an "overbid"; (c) the Colorado Mills APA required consummation of a Chapter 11 plan; and (d) if the parties

---

[58] Docket No. 197 at 7-8.

[59] Docket Nos. 212-215.

[60] Docket No. 321.

[61] Docket No. 321.

[62] Docket No. 345.

[63] Docket No. 345 at 2.

[64] Docket No. 371.

9

agreed on a Section 363 sale structure in advance of the Sale Hearing, then a Section 363 sale would go forward and the proposed plan would govern distributions. The Trustee did not, at that time, file the combined proposed Plan of Reorganization and Disclosure Statement. He did so on June 22, 2011.[65]

On the same day, the Trustee filed his trial brief. In it, the Trustee again admitted that the SunOpta APA would be sufficient to "pay off all remaining unsecured creditors in full" as would the Colorado Mills APA.[66] The Trustee identified three differences between the SunOpta and Colorado Mills APAs:

(1) The cash component of the SunOpta APA is $1,200,000; in the Colorado Mills APA, it is $1,500,000.[67]

(2) While both APAs proposed to assume the Equipment Lease, SunOpta has objected to such assumption by Colorado Mills on the basis that Colorado Mills cannot provide adequate assurance of future performance.[68]

(3) Under the SunOpta APA, the alleged SK Food contract(s) would not be assumed, while under the Colorado Mills APA, they would.[69]

### G. Fairness and Transparency

During the course of the Trustee's efforts to sell the estate assets, he has engaged in continuing discussions with both the Joint Venturers as well as others. Each of the Joint Venturers has had full and fair opportunities to submit competing bids for the sale of the property and each of the Joint Venturer has expressed interest in, and a desire for, a timely disposition of the estate's assets.

Specifically, notice of the Sale Motion was good and sufficient under the particular circumstances and no other or further notice need be given.

The prices for the Estate's assets submitted by either of the Joint Venturers, SunOpta and Colorado Mills, are fair, and the negotiations occurred at arm's-length. The Trustee, SunOpta and Colorado Mills were all represented by counsel in negotiations.

---

[65] Docket Nos. 381-82.

[66] Docket No. 372 at 3.

[67] Docket No. 372.

[68] Docket No. 372 at 3-4.

[69] Docket No. 372 at 3.

The Trustee negotiated the terms of sale with SunOpta through the end of 2010 and into 2011. While the Trustee was negotiating the terms of a sale to SunOpta, the Trustee spoke with a principal of a local investment banking firm regarding a fair market price range for a going concern of the Debtor's size and in the Debtor's position. SunOpta's and Colorado Mills's APAs are within the range provided.

While the Trustee was negotiating the terms of a sale to SunOpta, the Trustee informed Colorado Mills that the Trustee was negotiating the terms of a sale to SunOpta. The SunOpta APA is comprised of four main components:

(1) a cash purchase price of $1,200,000, subject to adjustment;
(2) a cure payment for accrued and unpaid rent through December 31, 2010;
(3) a credit against the cash purchase price for any unpaid rent after January 1, 2011; and
(4) assumption and assignment of the Equipment Agreement to SunOpta.

The Trustee and SunOpta agreed in the SunOpta APA to a cure payment in the amount of $663,091.83, which represents the unpaid monthly obligations on the Equipment Agreement through December 31, 2010 ("2010 Accrual"). SunOpta provided the Trustee with the amount of the 2010 Accrual, and the 2010 Accrual is $663, 091.83. Under the SunOpta APA, SunOpta is to pay the 2010 Accrual directly to SunOpta Foods. The SunOpta APA requires the purchase price of the Debtor's assets to be reduced by the amount of any unpaid monthly accrual on the Equipment Agreement arising after December 31, 2010 ("2011 Accrual"). The 2011 Accrual is set forth on SunOpta Foods's Exhibit 41 introduced at the June 15, 2011 hearing on the Rent Motion, and the final amount for the 2011 Accrual will be derived from SunOpta Foods's Exhibit 41, subject to adjustment based on amounts paid and outstanding as of the date of closing.

The Trustee negotiated Section 5.11 of the SunOpta APA. Section 5.11 of the SunOpta APA expressly allows the Trustee to seek higher and better offers for the Debtor's assets.

On May 12, 2011, the Trustee executed the Colorado Mills APA. The Colorado Mills APA contains the same pricing structure as the SunOpta APA. Under the Colorado Mills APA, Colorado Mills committed to pay $1,500,000 for the Debtor's assets. Under the Colorado Mills APA, Colorado Mills committed to pay to SunOpta Foods a cure amount equal to the 2010 Accrual and the 2011 Accrual, with a dollar-for-dollar reduction in the cash purchase price equal to the 2011 Accrual. Under the Colorado Mills APA, the Trustee will assume the Equipment Agreement and the SK Contracts and assign such to Colorado Mills. The Colorado Mills APA is a competing bid to the SunOpta APA.

### H. Colorado Mills APA - the Successful Bid

The Trustee testified that he considers the Colorado Mills APA as a higher and better offer to the SunOpta APA. The Trustee stated as his grounds therefor that the Colorado Mills APA was superior because it gave a higher cash consideration and resolved potential litigation in this case by assuming and assigning the Equipment Agreement and the SK Contracts.

The Trustee determined that the Colorado Mills APA is the highest and best bid for the Estate's assets, and the consideration contained in the Colorado Mills APA is the best offer for the Estate's assets. The Trustee testified that the Colorado Mills bid constitutes reasonably equivalent value and fair consideration under applicable bankruptcy and non-bankruptcy law.

The Trustee maintains that the sale of the Estate's assets as set forth in the Colorado Mills APA is the best interests of the Debtor, the Estate, creditors, and all other parties in interest.

The sale of the Estates assets as set forth in the Colorado Mills APA addresses the specific concerns of Judge Kane Judge Kane of the United States District Court for the District of Colorado raised in his Amended Stay Order and Order Administratively Closing Appeal dated May 5, 2011.[70] The Court concludes that the sale to either Colorado Mills or SunOpta has been negotiated in good faith, and this sale process carries no taint of bad faith, though Colorado Mills and SunOpta have aggressively litigated their respective positions.

### I. Credibility of the Witnesses and Quality of Evidence

Overall, this Court concludes that the testimony and quality of evidence is sufficient to properly rule on the issues before the Court. The Court concludes that most witnesses were credible and informative.

Nevertheless, while this Court believes that Mr. Paul Bent was credible, his testimony does not persuade this Court that Colorado Mills *cannot or will not* perform under it's APA, nor that the Colorado Mills APA should not be approved because Colorado Mills and its principals/guarantors were not truly credit-worthy or that they were unable to demonstrate adequate assurance of performance under section 365 of the Bankruptcy Code. Mr. Bent was a witness designated as an expert in the area of equipment leasing, industry customs and practice, commercial credit standards for debt and lease transactions, the commercial standards for financial statements, guarantees, and letters of credit - and following further testimony an expert regarding the specifics of the condition and trustworthiness of Colorado Mills financial statements and the condition and trustworthiness of its financial statements. His testimony reflected that he was not a panel trustee nor did he have the familiarity with respect to the "business judgment" requisite of a panel trustee. Moreover, Mr. Bent was not familiar with or

---

[70] Docket No. 308.

otherwise informed of the credit standards and credit bona fides of the initial lease arrangement and Colorado Mills's qualifications at the onset of the lease transaction with SunOpta Foods, the lessor. Nor was he informed or aware of the trust and financial confidence SunOpta Foods had in Colorado Mills prior to the dispute.

In addition, Mr. John Ruelle, a representative of SunOpta, was effectively impeached on the stand and his testimony was, in part, shown to be inconsistent and contradictory. His veracity and views were successfully challenged to the degree that his testimony was not notably credible.

All other witnesses were found to generally be credible.

## II. Fundamental Issues

The parties have presented various issues and the principal objector, SunOpta, has advanced different theories as to why the proposed sale to Colorado Mills should not be approved. Among those arguments opposing the sale two stand out; two are the controlling dominant questions before the Court:

(A) Whether the Trustee has good business reasons and demonstrated sound business judgment in supporting the sale of assets to Colorado Mills?

(B) Whether the proposed sale meets the standards of 11 U.S.C. § 365(f) and, particularly, if the proposed assignee, Colorado Mills, has provided adequate assurance of future performance under the Equipment Lease with SunOpta?

## III. Discussion

### A. Jurisdiction

This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (N). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### B. Sound Business Judgment

The factors for a court to consider under the "business judgment" test when deciding whether to approve the sale of the debtor's assets outside of the ordinary course of business include whether:

    a) Any improper or bad motive;
    b) The price is fair and the negotiations or bidding occurred at arm's length; and
    c) Adequate procedures, including proper exposure to the

> market and accurate and reasonable notice to all parties in interest.[71]

This Court should give deference to a trustee's judgment in pursuing a sale motion. In so doing, the Court is guided by the standards established by the Bankruptcy Code and the case law. As enunciated in *In re Castre, Inc.,* those standards provide that:

> a) In enacting the bankruptcy Code, Congress expressed its specific intent that Bankruptcy court judges should not participate in the administration of bankruptcy estates, but leave that task to the trustee.
> b) A trustee or a [debtor in possession] is responsible for administering the bankruptcy estate and his, her or management's judgment on the sale of estate assets and the procedure for sale is entitled to respect and deference from the Court, as long as the burden of giving sound business reasons is met.
> c) The Bankruptcy Court has the power to disapprove the proposed sale recommendations by the trustee or [debtor in possession], if the Court has an awareness that there is another proposal in hand which, from the estate's point of view, is better or more acceptable.
> d) However, the trustee or [debtor in possession] is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets; and, although the trustee's or [debtor in possession's] discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed by the Code in another's hands.[72]

1. <u>Motive</u>

The Court concludes that there has been no showing of any improper or bad motive. If anything, the SunOpta and Colorado Mills have merely demonstrated that they really do not like each other. Neither the Trustee nor Colorado Mills has engaged in any conduct that would cause or permit the Colorado Mills APA to be avoided under 11 U.S.C. § 363(n). Thus, this Court concludes that Colorado Mills is a good faith purchaser of the Estate's assets under 11 U.S.C. § 363(m) and is entitled to all protections thereunder.

The evidence demonstrates that because this transaction was entered into in good faith, the transfer of the Estate's assets to Colorado Mills will be a legal, valid, and effective transfer of

---

[71] *In re Castre, Inc.,* 312 B.R. 426 (Bankr. D.Colo. 2004) (citing *In re Lionel,* 722 F.2d 1063 (2d Cir. 1983).

[72] *Id.,* at 430-431.

14

the Estate's assets and will vest with Colorado Mills all right, title, and interest of the Debtor in the assets to be transferred free and clear of all liens, claims, interests, and encumbrances, with the notable exception of valid liens of record and the SunOpta Foods Equipment Lease.

The sale of the Estate's assets as set forth in the Colorado Mills APA is in the best interests of the Debtor, the Estate, creditors, and all other parties in interest.

Moreover, the sale of the Estate's assets as set forth in the Colorado Mills APA addresses the specific concerns of Judge Kane of the United States District Court for the District of Colorado raised in his Amended Stay Order and Order Administratively Closing Appeal dated May 5, 2011.[73] The sale to either Colorado Mills or SunOpta is done in good faith, and this sale process carries no taint of bad faith, though Colorado Mills and SunOpta have aggressively litigated their respective positions.

In the event Colorado Mills cannot close under the Colorado Mills APA, SunOpta, under that certain Asset Purchase Agreement dated February 3, 2011, is authorized to close under the SunOpta APA. If SunOpta is in fact the entity that closes the sale of the Estate's assets, SunOpta will have the protections of 11 U.S.C. § 363(m) and take the transferred assets free and clear of all liens, claims, encumbrances, and interests. Neither the Trustee nor SunOpta has engaged in any conduct that would cause or permit the SunOpta APA to be avoided under 11 U.S.C. § 363(n).

        2.     <u>Fair Price and Arm's Length Dealing</u>

The Court concludes that the sale is proposed in accordance with the Trustee's sound and reasonable business judgment and no party disputed the soundness of the Trustee's business judgment. Based upon the evidence during the hearing on this matter, it was demonstrated (and the parties largely did not dispute) that the price for the Estate's assets is fair, and the negotiations occurred at arm's-length. The Trustee, SunOpta, and Colorado Mills were all represented by counsel in negotiations.

The Colorado Mills APA resolves substantial questions concerning the nature of the Equipment Agreement. Parties to this case have disputed, although never formally before this Court, whether the Equipment Agreement is a true lease or financing arrangement. The assumption and assignment of the Equipment Agreement to Colorado Mills protects the Estate from litigation with regard to the nature of the Equipment Agreement.

The Colorado Mills APA resolves substantial questions concerning the contracts with SK Food International, Inc., and the resolution of such questions is a factor in determining the reasonableness of the Trustee's business judgment. Termination of the SK Contracts *may* create a substantial litigation risk for the Estate. Colorado Mills has also demonstrated adequate

---

[73]     Docket No. 308.

assurance of future performance under the SK Contracts.

The Colorado Mills APA is the highest and best bid for the Estate's assets, and the consideration contained in the Colorado Mills APA is the best offer for the Estate's assets and constitutes reasonably equivalent value and fair consideration under applicable bankruptcy and non-bankruptcy law.

### 3. Adequate Procedures

The Court concludes that the Notice of the Sale Motion was good and sufficient under the particular circumstances and no other or further notice need be given. Moreover, the question of whether or not notice was adequate was not pursued by any of the parties. Notwithstanding, this Court concludes that adequate procedures and processes were employed by the Trustee.

First, the Trustee testified during the evidentiary hearing regarding this matter that, prior to the filing of the Notice, he reviewed and relied on financial documents of Colorado Mills and the principals of Colorado Mills. In addition to the Financial Statements, the Trustee stated that he reviewed and relied on a guaranty of the Equipment Agreement executed by principals of Colorado Mills. The Trustee advised the Court that he determined upon review of the Assurance Documents that Colorado Mills was able to perform under the Lease Agreement after assumption and assignment to Colorado Mills. Moreover, the Trustee stated that he determined that the Colorado Mills APA was a higher and better offer to the SunOpta APA. The Trustee stated that the Colorado Mills APA was superior because it gave a higher cash consideration and resolved issues that could be litigated in this case by assuming and assigning the Equipment Agreement and SK Contracts.

Second, this Court, in fact, held an evidentiary hearing in this matter to allow any and all parties to object to and scrutinize the Trustee's transaction here. This Court held an evidentiary hearing on June 30 and July 1, 2011 on the Sale Motion and Notice. The Trustee, Colorado Mills, SK, and SunOpta presented evidence at the Sale Hearing regarding the Sale Motion, the SunOpta APA, the Colorado Mills APA, the Equipment Agreement, the SK Contracts, and other matters. The evidence presented at the Sale Hearing was and is sufficient for this Court to make a determination on the propriety of the sale of Estate assets and the assumption and assignment of certain executory contracts and unexpired leases.

### C. The Standards of 11 U.S.C. § 365(f)(2) and Adequate Assurance of Future Performance.

Fundamental to SunOpta's contention that this Court should not approve the Sale Motion and primary to the argument raised int is own Motion for Order Requiring Trustee to (I) Pay Rent; (II) Provide Adequate Protection; and (III) Assume or Reject Unexpired Lease of Personal Property filed by SunOpta Foods, Inc ("Sunopta Foods") is the question of whether there is adequate assurance of future performance in the event the Sale Motion is approved. 11 U.S.C. §

365(f)(2) provides:

> The Trustee may assign an executory contract or unexpired lease of the debtor only if—
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

A requisite component to whether the Colorado Mills APA is appropriate is whether Colorado Mills has demonstrated that there is adequate assurance that it can perform under its APA.[74] Colorado Mills has demonstrated an ability to perform under Colorado Mills APA, including payment of the 2010 Accrual and the 2011 Accrual owing to SunOpta. Colorado Mills has demonstrated the financial capability and organizational willingness to perform under that the Equipment Agreement, and therefore has provided adequate assurance of future performance of the Equipment Agreement to SunOpta Foods.[75]

Colorado Mills presented during the trial a Revised Guaranty which irrevocably bound and will hereafter irrevocably bind the principals of Colorado Mills to perform under the Equipment Agreement.[76] This Revised Guaranty and the persuasive testimony of Frederick Esgar, a banker with over fifty years' experience, and Tim Hume, both principals of Colorado Mills, demonstrate the commitment of Colorado Mills and its principals to performance under the Equipment Agreement.[77]

Upon assumption and assignment of the Equipment Agreement to Colorado Mills, SunOpta Foods shall receive all appropriate cure amounts, to date, then owing and adequate

---

[74] *See, e.g., In re PRK Enterprises, Inc.,* 235 B.R. 597 (Bankr. E.D. Tex. 1999)(assurance of future performance is adequate if performance is likely and the degree of assurance necessary to be deemed adequate falls considerably short of an absolute guaranty); *In re Bon Ton Restaurant & Pastry Shop, Inc.,* 53 B.R. 789 (Bankr. N.D. Ill. 1985)(adequate assurance of future performance is to be given a practical, pragmatic construction based upon the facts and circumstances of each case); *In re Fifth Ave. Originals,* 32 B.R. 648 (Bankr.S.D.N.Y. 1983)(the focus on the question of adequate assurance is on the assignee's ability to satisfy the financial obligations imposed by the lease).

[75] *See, In re Service Merchandise Co., Inc.,* 297 B.R. 675, 682 (Bankr. M.D. Tenn. 2002)(future performance is to be judged by the financial strength of the backers and the operating performance is to be judgment by prior and existing operating performance).

[76] Colorado Mills's Exhibit No. 113.

[77] Transcript, July 1, pp. 46-47, ¶¶ 6-16; pp. 69-70, ¶¶ 15-11; and p. 76, ¶¶ 4-18.

17

assurance of future performance, which address – and moot – the specific concerns raised in SunOpta Foods Inc.'s Motion for Order Requiring Trustee to (i) Pay Rent; (ii) Provide Adequate Protection; and (iii) Assume or Reject Unexpired Lease of Personal Property dated May 16, 2011.[78]

Moreover, adequate assurance of future performance as required by 11 U.S.C. § 365(f)(2) is bolstered in that the business judgment of the trustee in pursuing a sale motion has not been assailed based upon the evidence before the Court.[79] That is, the sale is pursued without any improper or bad motive, the price is fair and the negotiations or bidding occurred at arm's length, and the Trustee has proceeded using adequate procedures, including proper exposure to the market and accurate and reasonable notice to all parties in interest.[80]

Consequently, the Court concludes that adequate assurance of future performance has been demonstrated and the requirements of 11 U.S.C. § 365(f)(2) have been satisfied.

## IV.     **Conclusion and Order**

The testimony and evidence before this Court demonstrate that the Trustee has exercised his best "business judgment." There is no demonstration of an improper or bad motive. Based upon the evidence before this Court, the price is fair and the negotiations and bidding occurred at "arm's length." The procedures employed by the Trustee were adequate under the facts and circumstances of this case. Consequently, the Court will approve the Trustee's Sale Motion.

The Court further concludes that the approval of the Trustee's Sale Motion renders Moot SunOpta's Motion for Order Requiring Trustee to (I) Pay Rent; (II) Provide Adequate Protection; and (III) Assume or Reject Unexpired Lease of Personal Property.

IT IS THEREFORE ORDERED that the Trustee's Sale Motion is GRANTED. Colorado Mills APA is APPROVED.

---

[78]     Docket #317.

[79]     *Supra* section III.B.

[80]     *Castre, Inc.,* 312 B.R. at 428.

IT IS FURTHER ORDERED that the Motion for Order Requiring Trustee to (I) Pay Rent; (II) Provide Adequate Protection; and (III) Assume or Reject Unexpired Lease of Personal Property filed by SunOpta Foods is DEEMED MOOT.

Dated this 12th day of August, 2011.

BY THE COURT:

*Sid Brooks*

Sidney B. Brooks,
United States Bankruptcy Judge